# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| CALEB WHTFIELD, | : | Case No. 3:23-cv-23 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| CORRECTION OFFICER GUSTAVE, *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an inmate currently at the Toledo Correctional Institution (ToCI), in Toledo, Ohio, brings this *pro se* civil rights action for alleged violations of his rights while he was a pre-trial detainee at the Montgomery County Jail (Jail), in Dayton, Ohio. The Court understands the action to be brought pursuant to 42 U.S.C. § 1983.[1] By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is now before the Court for a s*ua sponte* review of the complaint to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

---

[1]*See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 624 (1979) ("Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'") (footnote omitted).

## Screening of Complaint

### A.    Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94

2

(2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).   By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation."   *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."   *Id.* at 557.   The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Erickson*, 551 U.S. at 93 (citations omitted).

B.   **Plaintiff's Complaint**

Plaintiff's twenty-seven page complaint consists of seven groups of claims, which are set forth in 164 separately numbered paragraphs against nineteen defendants.[2]   For the sake of

---

[2]Plaintiff names the following defendants in their individual capacities:   Corrections Officer Gustave, Corrections Officer Molton, Sergeant Bemis, Sergeant Eaton, Deputy John Doe (No. 1), Deputy John Doe (No. 2),

clarity, the Court will refer to plaintiff's groups of claims as counts.

### Count One

In Count One, plaintiff alleges that on December 17, 2021, at 7 p.m., defendant Corrections Officer Gustave demanded that plaintiff return an electronic tablet shortly after plaintiff had begun a video visit with his girlfriend.   Plaintiff states that he had requested the tablet an hour early to prevent not having one at the time his visit started.   When plaintiff told Gustave that his visit was just beginning, Gustave allegedly said, "You have 5 more minutes." (Doc. 1, at PageID 4).   Gustave allegedly returned five minutes later and opened plaintiff's food port so that plaintiff could pass him the tablet.   Plaintiff refused and asked Gustave to call a sergeant.   Plaintiff alleges that Gustave refused to call a sergeant and instead had the control center turn off plaintiff's tablet.   Plaintiff alleges that he then placed his arm outside of the food port to prevent Gustave from closing the port until Gustave agreed to call a sergeant, which plaintiff alleges Gustave was required to do per Jail policy.   Gustave allegedly still refused to call a sergeant and, after exchanging words with plaintiff, approached plaintiff's cell with defendant Corrections Officer Molton.   Plaintiff alleges that Gustave grabbed his left arm and Molton grabbed his right arm.   Plaintiff alleges that Gustave immediately pulled him "outward" by his wrist, causing plaintiff to hit his head on the cell door.   Plaintiff alleges that Gustave then grabbed his forearm and bent it, yelling "I'll break it[.]"   (Doc. 1, at PageID 5).   Plaintiff alleges that he was able to break free of Gustave's grasp but Gustave began to punch his arm.

---

Captain Stephens, Corrections Officer Runyan, Deputy John Doe (No. 3), Sergeant Eversole, Sergeant Evers, Sergeant D. Adams, Sergeant Whittaker (also spelled "Whitter" by plaintiff (*see* Doc. 1, at PageID 21)), and Sergeant Steele. Plaintiff names the following defendants in their official and individual capacities:   Adult Parole Authority (APA) Officer John Doe (No. 1), APA Officer John Doe (No. 2), APA Officer Jane Doe, Captain Parin, and Sheriff Robert Streck.   (Doc. 1, at PageID 2-3).

Plaintiff avers that defendant Corrections Officer Molton stood by but failed to intervene. (Doc. 1, at PageID 4-6).

Based on the above allegations, plaintiff asserts that: (1) defendant Gustave used excessive force in violation of the Fourteenth Amendment, violated Jail policy, and violated plaintiff's First and Fourteenth Amendment rights by ending his video visit early; (2) defendant Molton failed to intervene to stop Gustave's alleged use of excessive force in violation of the Fourteenth Amendment; and (3) defendants Gustave and Molton conspired to violate his constitutional rights. (Doc. 1, at PageID 5-6).[3]

### Count Two

In Count Two, plaintiff alleges that, following the above events, defendant Sergeant Bemis responded to the housing block. Plaintiff alleges that he placed the tablet outside of his cell "to show compliance and that there were more issues at hand." (Doc. 1, at PageID 6). Plaintiff contends that when he voiced his concerns about the events alleged in Claim One, Bemis ignored him and ordered plaintiff's cell to be "stripped of everything mattress and property." (*Id.*).

Plaintiff alleges that several hours later, on December 18, 2021, defendant Sergeant Eaton and several deputies came to plaintiff's cell, demanded him to cuff up, and escorted him to a transport cell that had blood, urine, and feces on the walls and the cuff port and was partially

---

[3] Plaintiff's complaint states that he is bringing his conditions-of-confinement claims under the Eighth Amendment. (*See, e.g.,* Doc. 1, at PageID 5). "The Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees." *Bensfield v. Murray*, No. 4:21-cv-P104, 2022 WL 508902, at *2 (W.D. Ky. Feb. 18, 2022) (citing *Brawner v. Scott Cty.*, 14 F.4th 585, 591 (6th Cir. 2021)). Because plaintiff is *pro se*, the undersigned liberally construes his Eighth Amendment claims as brought under the Fourteenth Amendment because he appears to have been a pretrial detainee at the time of the alleged events. *See, e.g., Camacho v. Cordova*, No. 120CV03691, 2021 WL 6010976, at *4 (D. Colo. Nov. 2, 2021), *report and recommendation adopted*, No. 120CV03691, 2021 WL 5492334 (D. Colo. Nov. 23, 2021).

flooded with sewage water coming from the toilet area. Plaintiff alleges that for forty-eight hours he was denied a mattress, shower, and hygiene products, and given only bologna sandwiches to eat. Plaintiff alleges that on December 18th or 19th, Bemis came to the transport cell in the middle of the night and asked if plaintiff would accept twenty days of restrictions instead of the thirty days Bemis was initially going to give him. Plaintiff claims that he said "yes" in hopes of getting out of the transport cell. (Doc. 1, at PageID 7). Plaintiff states that he received phone, recreation, tablet, visitation, and cell restrictions but did not receive any paperwork or a hearing. Plaintiff also states that as soon as he was taken off of restriction he filed a complaint and grievance and that defendant Sergeant D. Adams responded, "this subject is closed if you file another grievance about this situation then I will place you on kiosk restriction." (*Id*.).

Based on the above allegations, plaintiff asserts that: (1) defendant Eaton placed him in a transport cell and subjected him to unconstitutional conditions of confinement in violation of the Fourteenth Amendment, and violated Jail policy; and (2) defendant Bemis removed his property, placed him on restrictions without a hearing, and failed to intervene to remove him from the transport cell in violation of the Fourteenth Amendment. (Doc. 1, at PageID 4-8).

### Count Three

In Count Three, plaintiff alleges that on February 16, 2022, defendants Deputy John Doe No. 1, Deputy John Doe No. 2, APA Officer John Doe No. 1, APA Officer John Doe No. 2, and APA Officer Jane Doe used excessive force against plaintiff following his refusal to follow an order to turn around in an elevator after a final pre-trial conference. Plaintiff alleges that, although defendant Sergeant Eversole escorted him to his cell and took pictures of injuries he

received to his nose, wrists, and head, the use of force was never documented and he never received a disciplinary ticket.

Based on the above allegations, plaintiff asserts that:   (1) defendant Deputies John Doe Nos. 1 and 2 used excessive force and improperly allowed the defendant APA Officers to intervene in the use of force in violation of the Fourteenth Amendment; and (2) the defendant APA Officers improperly intervened and use excessive force in violation of the Fourteenth Amendment.   (Doc. 1, at PageID 8-10).

### *Count Four*

In Count Four, plaintiff alleges that following his filing a grievance concerning the events alleged in Count Three, a corrections officer, who is not named as a defendant, came to his cell at 1:30 a.m. saying that the sergeant wanted to know what time the incident occurred.   Plaintiff alleges that he responded, "Is it really that important to wake me up?"   (Doc. 1, at PageID 11). Plaintiff alleges that he also thought that the sergeant should have known the time of the incident because use-of-force incidents should be documented.   Plaintiff alleges that he rolled over and went back to sleep.   According to plaintiff, the corrections officer returned asking the same question multiple times.   Plaintiff alleges that at 3 a.m. he decided to check his messages and saw that defendant Eaton had responded to the grievance by attempting to justify the use of force.   Plaintiff alleges that he cannot remember if he responded to Eaton but believes he did.

According to plaintiff, at approximately 5 a.m., the non-defendant corrections officer, defendant Corrections Officer Runyan, and defendant Deputy John Doe No. 3 knocked on his cell and told him to pack his belongings because he was moving.   Plaintiff alleges that he complied with the order to pack his things and was moved to a cell in the back of the pod.

Plaintiff alleges that the cell smelled of urine, was smeared with a dark substance, and had food on the floor, a clogged sink, and no running water. Plaintiff alleges that he asked staff for a porter to clean the cell but Runyan said, "[I]t's too late for that now." (Doc. 1, at PageID 11). Plaintiff alleges that Runyan refused to call a sergeant, told plaintiff to get in the cell, and simultaneously pushed and pulled at plaintiff, which caused plaintiff to fall and hit his head. Plaintiff alleges that Runyan landed on top of him and began punching his abdomen, while the non-defendant corrections officer held plaintiff's legs and Deputy John Doe No. 3 held a taser to plaintiff's head and dared him to move. Runyan then allegedly removed plaintiff's handcuffs and uttered something like "sue that" when he exited plaintiff's cell. (Doc. 1, at PageID 12).

Plaintiff alleges that he filed complaints and grievances regarding his cell move, the alleged assault, and the conditions of his cell. Plaintiff alleges that defendant Eaton denied his grievances and ultimately sought to prevent him from filing grievances by limiting his tablet use to the one hour of recreation time he was allotted a day. Plaintiff further alleges that he asked for someone other than Eaton to respond to his grievances. According to plaintiff, defendant Captain Stephens responded to one of his complaints stating that she was following the situation. Plaintiff contends, however, that Eaton continued to intercept his complaints and grievances.

Based on the above allegations, plaintiff asserts that: (1) defendant Eaton failed to properly respond to his grievances in violation of the Fourteenth Amendment and retaliated against him in violation of the First Amendment; (2) defendant Stephens failed to train and discipline staff and investigate plaintiff's complaints in violation of the Fourteenth Amendment; (3) defendant Runyon used excessive force in violation of the Fourteenth Amendment; (4) Deputy John Doe No. 3 used excessive force and failed to intervene to protect plaintiff in

8

violation of the Fourteenth Amendment; and (5) defendants Eaton, Stephens, Runyon, and Deputy John Doe No. 3 conspired to violate plaintiff's rights.   (Doc. 1, at PageID 11-14).

### *Count Five*

In Count Five, plaintiff alleges that on an unspecified day a deputy, who is not named as a defendant, noticed that the lock on plaintiff's cell door was damaged.   A sergeant, who is not named as a defendant, told plaintiff that he would be moved to a holding cell until the lock was fixed.   Plaintiff alleges that when he was moved to intake, he repeatedly knocked on his door to tell staff that he was having chest pains.   Plaintiff states that he was ignored and eventually started to pound on the door to get a supervisor's attention.   Plaintiff alleges that defendant Sergeant Evers and other staff approached his cell and told him to cuff up.   Plaintiff alleges that he was transferred to a transport cell at the back of the Jail, where he remained for approximately two weeks.   Plaintiff alleges that he was denied a mattress for two days and the cell was covered in feces, smelled like urine, had a bright light that never turned off, and an inoperable sink. Plaintiff also alleges that he was denied outside-the-cell exercise, personal property, legal mail, hygiene items, and cleaning supplies.   Plaintiff further alleges that defendant Eversole knew plaintiff was in the transport cell and could have returned him to segregation, where he was housed prior to his move.   Plaintiff alleges that Eversole failed to intervene because he believed, without having any evidence, that plaintiff had damaged the lock on his cell.   Plaintiff alleges that he never received a disciplinary report for damaging the lock.

Based on the above allegations, plaintiff asserts that:   (1) defendant Evers removed plaintiff's property and subjected him to unconstitutional conditions of confinement in violation of the Fourteenth Amendment; and (2) defendant Eversole failed to intervene to remove plaintiff

from the transport cell in violation of the Fourteenth Amendment.   (Doc. 1, at PageID 15-17).

### Count Six

In Count Six, plaintiff alleges that in September 2022 defendant Sergeant Steele and a couple of unidentified staff members woke him up to tell him he was moving to a different cell. Steele allegedly asked plaintiff for his "whites, socks, boxers, and blankets and towel."   (Doc. 1, at PageID 17).   Plaintiff alleges that he asked for an explanation but none was given so he refused to comply.   Plaintiff alleges that when Steele called for assistance defendant Captain Parin was already there and told plaintiff to comply.   Plaintiff alleges that he complied and was taken to a different cell in the same pod.   Plaintiff alleges that after a couple of days he was able to file a grievance against Steele and Parin and complained that he had improperly received disciplinary restrictions.   Plaintiff alleges that Steele responded, "[W]e took only your extra whites and we took your tablet privilege because you threw it down on the ground and broke it." (Doc. 1, at PageID 18).   Plaintiff alleges that he continued to file grievances in an attempt to have someone who was not involved in the incident respond.   Plaintiff states that defendant Adams responded, "[Y]ou flooded your cell, kicked your door, and covered your window that's why we did it and now you will have to file paper kites."   (*Id.*).   Plaintiff alleges that Adams provided different reasons than Steele for plaintiff's cell move and restrictions.   Plaintiff also alleges that Adams disconnected his kiosk login, preventing plaintiff from "engaging in protected conduct, communicating with family, connecting with medical, fil[ing] request[s] for a[] supervisor[], . . . ordering commissary, . . . access to the law library, . . . visits from loved ones, etc."   (*Id*).

Plaintiff alleges that several days later he complained to an unidentified corrections

officer that his kiosk login had been damaged. Plaintiff claims that Sergeant Miller, who is not named as a defendant, restored his login. Plaintiff alleges that he immediately filed a grievance against defendants Steele, Adams, and Parin. Adams allegedly responded and threatened to again turn off plaintiff's kiosk login.

Plaintiff alleges that the next day he "rode out" to prison but returned to the Jail two weeks later. Plaintiff alleges that within a few days of returning to the Jail he was again placed on tablet restriction. Plaintiff alleges that he filed a grievance, and when he went to check on a response, he learned that his kiosk login had again been turned off. Plaintiff alleges that a non-defendant corrections officer told him that the computer indicated that plaintiff was on restriction but that no reason was given.

Plaintiff alleges that during this time his wisdom tooth started to hurt but without a tablet or login he could not send a health request. Plaintiff alleges that when he tried to address medical staff, they told him to submit a request or take it up with a sergeant. Plaintiff alleges that he blocked the food port of his cell to get a supervisor's attention. Plaintiff alleges that defendant Sergeant Whittaker responded. However, instead of addressing plaintiff's concerns, Whittaker advised plaintiff that she would tell Adams about the blocked food port. Plaintiff asked staff to contact defendant Parin, who allegedly relayed back a message that plaintiff would not be receiving a tablet and that his kiosk login would remain off. Plaintiff alleges that his kiosk login was restored after two weeks. According to plaintiff, by the time he received medical treatment for his tooth a lump was forming in his neck.

Based on the above allegations, plaintiff asserts that: (1) defendant Parin failed to supervise staff, removed plaintiff's property without a hearing, and subjected him to

unconstitutional conditions of confinement in violation of the Fourteenth Amendment, and

violated Ohio Department of Rehabilitation and Correction and Jail policies; (2) defendant

Adams retaliated against plaintiff in violation of the First Amendment and subjected him to

unconstitutional conditions of confinement in violation of the Fourteenth Amendment; (3)

defendant Whittaker failed to address plaintiff's complaints in violation of the Fourteenth

Amendment; (4) defendant Steele removed plaintiff's property without due process and failed to

correct unconstitutional conditions of confinement in violation of the Fourteenth Amendment;

and (5) defendants Parin, Adams, Whittaker, and Steele conspired to violate plaintiff's

constitutional rights.   (Doc. 1, at PageID 17-22).

### Count Seven

In Count Seven, plaintiff alleges that defendant Montgomery County Sheriff Robert

Streck failed to create a grievance policy at the Jail to prevent retaliation and failed to train,

supervise, and discipline staff in violation of the Fourteenth Amendment.   (Doc. 1, at PageID

22-24).

For relief, plaintiff seeks monetary damages and injunctive relief.   (Doc. 1, at PageID

25-26).

## C.    Analysis

Plaintiff's complaint involves claims that arise out of separate incidents and involve

different defendants and issues.   A plaintiff may not join unrelated claims and various

defendants unless the claims arise "out of the same transaction, occurrence, or series of

transactions or occurrences; and . . . any question of law or fact common to all defendants will

arise in the action."   Fed. R. Civ. P. 20(a)(2).   *See also George v. Smith*, 507 F.3d 605, 607 (7th

12

Cir. 2007) ("Unrelated claims against defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

"[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." *Cage v. Mich.*, No. 16cv11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018). *See also Harris v. Erdos*, No. 1:21-cv-104, 2022 WL 3053496, at *7 (S.D. Ohio Aug. 3, 2022). Under Fed. R. Civ. P. 21, courts have "broad discretion 'to order severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp.2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corrections*, No. 07-10831, 2007 WL 4465247, *3 (E.D. Mich. 2007)) (alteration in original).

At this stage of the proceedings, without the benefit of briefing by the parties to this action, and considering the claims in the order in which they are pleaded, the undersigned concludes that plaintiff may proceed for further development at this juncture with Count One's Fourteenth Amendment excessive-force claim as well as Count One's First and Fourteenth Amendment claims relating to the discontinuation of plaintiff's December 21, 2021 video visit[4] against defendant Gustave for damages in his individual capacity; Count One's Fourteenth Amendment failure-to-intervene claim against defendant Molton for damages in his individual

_____

[4] *Cf. Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) ("federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends") (citation omitted).

capacity; and Count Two's Fourteenth Amendment due process and conditions-of-confinement claims against defendants Bevis and Eaton for damages in their individual capacities.[5] However, for the reasons set forth below, the remaining claims in Counts One and Two should be dismissed with prejudice for failure to state a claim upon which relief can be granted, with the exception of plaintiff's claims for injunctive relief which should be dismissed without prejudice as moot.   28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).   Further, although arguably related to the above claims insofar as plaintiff alleges supervisory liability, plaintiff's claims against Sheriff Streck in Claim Seven are subject to dismissal for failure to state a claim upon which relief can be granted.   However, the claims in Counts Three through Six are improperly joined in this action and should be **DISMISSED without prejudice** to plaintiff re-filing a separate action or actions including such claims if he so wishes.   Fed. R. Civ. P. 20(a)(2); 21.

First, although the Court has permitted plaintiff to proceed for further development at this juncture with certain damages claims contained in Counts One and Two, plaintiff's claims for injunctive relief should be dismissed without prejudice because his transfer from the Jail to ToCI has rendered his claims for injunctive relief moot.   *See Colvin v. Caruso,* 605 F.3d 282, 289 (6th Cir. 2010) (holding that claims for declaratory and injunctive relief that were "directed specifically" at a certain prison's "policies and procedures and were not targeted at [the state corrections] program as a whole" were rendered moot by the plaintiff's transfer to another state prison).

---

[5]Notably, while the Court has determined that these claims may proceed for further development at this juncture, "[t]he court cautions Plaintiff this is only a preliminary determination.   The court has not made a determination on the merits of his claim[] or potential defenses thereto, nor [is] Defendant[] precluded from filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."   *Wiley v. Austin*, No. 8:20CV220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

Next, plaintiff has failed to state a claim upon which relief can be granted to the extent he asserts in Counts One and Two that defendants violated Jail policy. "Failure to comply with jail policy is not a per se constitutional violation." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 421 (6th Cir. 2015) (citing *Meier v. County of Presque Isle*, 376 F. App'x. 524, 529 (6th Cir. 2010)); *see also Matheson v. Gentry*, No. 2:05-CV-70, 2005 WL 1458058, at *2 (E.D. Tenn. June 20, 2005) ("Nor does it violate the plaintiff's constitutional rights when a jail fails to follow its own policies.").

Plaintiff has also failed to state a viable conspiracy claim against defendants Gustave and Molton in Count One. It is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010). *See also Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) ("The plaintiff must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.") (internal quotation marks omitted); *Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir. 1987)) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity"). Here, plaintiff's factual allegations are insufficient to suggest that the defendants shared a conspiratorial objective or otherwise planned together to deprive him of a constitutionally protected right. Therefore, plaintiff's vague, unsubstantiated

15

and conclusory claim based on a conspiracy theory lacks the requisite specificity to state a cognizable claim under 42 U.S.C. § 1983.

Further, to the extent that plaintiff mentions defendant Adams in Count Two (*see* Doc. 1, at PageID 7), it does not appear that plaintiff intends to state a claim against Adams in that count. Rather, the Court understands plaintiff's reference to Adams in Count Two merely to provide context for his unrelated claims against Adams in Count Six.   (*See id.*, stating "[d]etails and more information is argued against defendant #16 Sgt. D. Adams later in this complaint").

However, to the extent plaintiff does intend to state a claim against Adams in Count Two, he has not done so.   Plaintiff simply alleges that in response to a grievance Adams state that "this subject is closed if you file another grievance about this situation then I will place you on kiosk restriction."  (Doc. 1, at PageID 7).   These allegations are insufficient to support a plausible retaliation claim.  *See, e.g., Stephens v. Helder*, No. 5:17-cv-05045, 2017 WL 2645524, at *8 (W.D. Ark. June 19, 2017) ("As [the defendant's] response did not direct [the plaintiff] to stop grieving in general, or stop submitting grievances that related to [prison] custody, the response could not plausibly be construed to chill future speech.").

Similarly, plaintiff has failed to state a claim upon which relief can be granted against defendant Sheriff Streck in Count Seven.   Plaintiff's claim that Streck failed to implement a proper grievance policy at the Jail is subject to dismissal because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure."  *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted).

Nor has plaintiff stated a plausible supervisory liability claim against Streck based on an alleged failure to train, supervise, or discipline.   Plaintiff has failed to allege facts showing that

16

Streck was personally present or had any involvement in the alleged incidents, as would be necessary to plead an individual capacity claim.   "A supervisory employee cannot be held liable under § 1983 for the constitutional torts of those he supervises unless it is shown 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'"   *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

Further, an official capacity suit is generally "only another way of pleading an action against an entity of which an officer is an agent."   *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).   Thus, official-capacity claims against the Montgomery County Sheriff are equivalent to claims against Montgomery County.   *Powers v. County of Lorain,* 259 F. App'x 818, 822 n.2 (6th Cir. 2008) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)).   Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law."   *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).   In addition to identifying "conduct properly attributable to the municipality" itself, the plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged."   *Cherrington v. Skeeter,* 344 F.3d 631, 645 (6th Cir. 2003) (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404 (1997)).   Plaintiff has failed to allege facts indicating that Montgomery County's polies or customs caused any of the alleged constitutional deprivations set forth in the complaint.

17

In the context of a failure to train claim, plaintiff must allege "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation, quotation marks, and brackets omitted).    Plaintiff does not allege any facts indicating that the County knew of prior unconstitutional conduct on the part of Montgomery County Jail staff.    Plaintiff merely assumes an unconstitutional policy based on his own alleged experiences at the Jail.    However, "allegations 'assum[ing] that [unlawful behavior] must be the result of [an entity's] failure to train or [its] policies or procedures' are plainly insufficient."  *Koren v. Neil*, No. 1:21-cv-9, 2022 WL 974340, at *10 (S.D. Ohio Mar. 31, 2022) (quoting *Rowland v. City of Memphis, Tenn.*, No. 2:13-cv-02040, 2013 WL 2147457, at *5 (W.D. Tenn. May 15, 2013)) (alterations in original). Accordingly, Count Seven is subject to dismissal.

The remaining four counts of the complaint—Counts Three through Six—should be dismissed without prejudice because they are improperly joined in this action.    To the extent the claims asserted in Counts Three through Six may share some common legal questions or defendants with the claims in Counts One and Two, they are improperly joined in this action because they are factually distinct and do not arise out of the same transaction, occurrence, or series of transactions or occurrences.    Fed. R. Civ. P. 20(a)(2).    *See, e.g., Atkins v. Daw*dy, No. 2:22-cv-150, 2022 WL 4233274, at *5 (W.D. Mich. Sept. 14, 2022) (finding claims misjoined where, "though they may [have] involve[d] some common legal questions," the claims were "factually distinct and . . . certainly [did] not rise out of the same transactions or occurrences" as the plaintiff's other claims); *Versatile v. Kelly,* 3:11CV308, 2012 WL 1267896, at *4 (E.D. Va.

Apr. 13, 2012) ("[T]he fact that Claim A shares two out of twenty defendants in common with unrelated Claim B and its ten defendants, does not mean that Claim A and Claim B are appropriately united in a single action" (quoting *Ghashiyah v. Frank,* No. 05–C–0766, 2008 WL 680203, at * 2 (E.D. Wis. Mar. 10, 2008))).

Because plaintiff has improperly included his remaining claims in this action, they should be dismissed without prejudice to plaintiff re-filing a separate action or actions including such claims if he so wishes.   Fed. R. Civ. P. 20(a)(2); 21.

Accordingly, in sum, plaintiff may proceed at this juncture with Count One's Fourteenth Amendment excessive-use-of-force claim as well as Count One's First and Fourteenth Amendment claims relating to the discontinuation of plaintiff's December 21, 2021 video visit against defendant Gustave for damages in his individual capacity; Count One's Fourteenth Amendment failure-to-intervene claim against defendant Molton for damages in his individual capacity; and Count Two's Fourteenth Amendment due process and conditions-of-confinement claims against defendants Bevis and Eaton for damages in their individual capacities.   However, for the reasons set forth above, the remaining claims in Counts One and Two, and the claims in Count Seven should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted, with the exception of plaintiff's claims for injunctive relief which should be **DISMISSED WITHOUT PREJUDICE AS MOOT**.   28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).   For the reasons stated above, plaintiff's unrelated claims in Counts Three through Six should be **SEVERED** and **DISMISSED WITHOUT PREJUDICE**.   Fed. R. Civ. P. 20(a)(2); 21.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Court **DISMISS WITH PREJUDICE** Counts One, Two, and Seven of plaintiff's complaint, **with the exception of** Count One's Fourteenth Amendment excessive-use-of-force claim and First and Fourteenth Amendment claims relating to the discontinuation of plaintiff's December 21, 2021 video visit against defendant Gustave for damages in his individual capacity; Count One's Fourteenth Amendment failure-to-intervene claim for damages against defendant Molton in his individual capacity; and Count Two's Fourteenth Amendment due process and conditions-of-confinement claims for damages against defendants Bevis and Eaton in their individual capacities.

2. The Court **DISMISS WITHOUT PREJUDICE AS MOOT** plaintiff's claims for injunctive relief.  28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).

3. The Court **SEVER** and **DISMISS** the remaining four counts of the complaint—Counts Three through Six—**WITHOUT PREJUDICE** to plaintiff re-filing a separate action or actions including such claims if he so wishes.  Fed. R. Civ. P. 20(a)(2); 21.  *See also Harris,* 2022 WL 3053496, at *7.

4. The Court certify pursuant to 28 U.S.C. § 1915(e)(2)(B) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued granting plaintiff *in forma pauperis* status, and this Order and Report and

Recommendation upon defendants Gustave, Molton, Bemis, and Eaton, as directed by plaintiff.

2.  Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.   Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel.   Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3.  Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

### PROCEDURE ON OBJECTIONS:

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*,

474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


June 21, 2023

KAREN L. LITKOVITZ
United States Magistrate Judge